**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| HUGO SPIEKER, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 07-1225-EFM |
| | ) | |
| QUEST CHEROKEE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

This matter is before the court on plaintiffs' motion to compel the production of

electronically stored information.  (Doc. 41).  Defendant opposes the motion, arguing that

(1) the cost of searching and producing the requested information is unduly burdensome and

(2) the electronically stored information is duplicative of information otherwise being

produced.  In the alternative, defendant asks that the discovery requests be narrowed and/or

that the cost of discovery be shifted to plaintiffs.  For the reasons set forth below, the motion

shall be DENIED WITHOUT PREJUDICE.

**Background**

Plaintiffs are current and/or former owners of mineral interests in lands burdened by

oil and gas leases owned by defendant.[1]  Highly summarized, plaintiffs allege that defendant

has failed to pay the proper amount of royalties by:

> 1.  paying royalties based on reduced volumes rather than on the volume of gas measured at the wellhead;
>
> 2.  making untimely royalty payments without paying interest;
>
> 3.  allocating expenses in excess of the actual cost of the services represented;
>
> 4.  improperly allocating expenses associated with the production of the effluent stream; and
>
> 5.  improperly allocating marketing costs to plaintiffs.

In addition to their individual claims, plaintiffs seek to represent a class consisting of owners

of mineral and/or royalty interests in the Kansas portion of the Cherokee Basin burdened by

leases owned by defendant.


**Motion to Compel**

Plaintiffs served defendant with four separate sets of document production requests.

Defendant made materials available for inspection and copying but objected to the

production of certain electronically stored information ("ESI").  The parties conferred in

good faith but reached an impasse concerning email messages.

---

[1]

Plaintiffs' mineral interests are located in the Kansas portion of the Cherokee Basin, a zone primarily producing coalbed natural gas in southeast Kansas.  Quest apparently owns approximately 2,500 oil and gas leases in the Kansas portion of the Cherokee Basin and operates approximately 2,000 coalbed methane gas wells on those leases.  (Doc. 42, Exhibit 4).

In its response to the motion, defendant represents that it (1) identified all of the ESI that exists, (2) obtained estimates from a third-party vendor for its production, (3) shared that information with plaintiffs, (4) informally provided plaintiffs with the names of the decision-makers for various issues, (5) allowed (at least initially) plaintiffs to unilaterally determine what ESI to search, (6) obtained more specific information about the email files sought by plaintiffs (including third-party vendor cost estimates), (7) collected and delivered the email data to a reputable third-party vendor (Kroll Ontrack or "Kroll"), and (8) allowed plaintiffs to develop and propose their own search terms.

The parties engaged in additional discussions concerning the search terms and made minor modifications.  Kroll then applied the search terms to the email data set and the resulting volume of ESI was unmanageable.  Defendant suggested additional revisions to the search terms to which plaintiffs agreed.  Defendant ran the revised search terms which generated a total of approximately 32 gigabytes of data "comprised of 31,000 documents and 1,400,000 pages."  (Doc. 42, Exhibit 20).  Kroll's charge to process this volume of ESI for review is approximately $82,500 and the vendor estimates an additional charge of $38,500 to copy the ESI information in TIFF format.[2]  Defendant also estimates that a "privilege and relevance" review by counsel for this volume of data will cost at least $250,000, raising the

---

2

Kroll's estimate for putting the data in TIFF format is based on the assumption that one-third of the ESI generated from the parties' search terms will be produced and two-thirds will be non-responsive or privileged.  These percentages are based on Kroll's experience and industry data and the *actual* percentage of relevant, non-privileged emails could be much higher or lower.

total production cost to approximately $375,000. Plaintiffs declined defendant's request to refine the search terms and defendant refused to incur the estimated production cost of $375,000. Because of this impasse, plaintiffs move to compel production of the requested email information. The parties' arguments are set forth in greater detail below.

Stripped of prolixity, the pivotal issue is whether defendant should be compelled, *at this stage of the litigation,* to produce email information given the costs associated with gathering, analyzing, and producing the email messages. Defendant argues that a class action has not been certified and that the amount of the *named* plaintiffs' claims ($100,000 or less) does not justify the costs of production. Defendant also argues that plaintiffs have not shown that the information requested is relevant to the issue of class certification. Plaintiffs counter that this is a "putative class action, in which more than 1,800 members of the plaintiff class challenge Quest's royalty payment policies and practices;" therefore, the amount in controversy exceeds $ 5 million. (Doc. 46, p. 5, footnote 1 and p. 6). Plaintiffs also question defendant's cost estimates.

Plaintiffs' suggestion that defendant is obligated to incur expensive discovery costs simply because the complaint contains allegations of class claims is not persuasive. The issue of class certification is typically resolved at a relatively early stage in the litigation to

avoid unnecessary discovery expenses in the event a class is not certified.[3]   Similarly,

defendant's argument that discovery expenses are evaluated by reference to *only* the value

of the individually named plaintiff claims is also not persuasive.  Plaintiffs are entitled to

conduct some discovery to support their request for class certification.[4]

The difficulty here is that plaintiffs have not explained how the disputed ESI

discovery is relevant to the issue of class certification.  In the absence of an explanation by

plaintiffs of the relevance of the ESI materials to the issue of class certification, the court will

not require defendant to incur discovery expenses in excess of $82,000.   Plaintiffs'

explanation about relevance will also allow the court to better evaluate other issues raised by

the parties, such as (1) whether the discovery is duplicative and/or (2) available through less

expensive sources.  Accordingly, plaintiffs' motion to compel shall be denied without

prejudice pending a renewed motion explaining the relevance of the discovery to class

certification.

Because plaintiffs are granted leave to refile their motion, the court briefly addresses

a number of additional arguments raised by the parties.

---

[3]

"***At an early practicable time*** after a person sues or is sued as a class
representative, the court must determine by order whether to certify the action as a class
action."  Fed. R. Civ. P. 23(c)(1)(A) (emphasis added).  The local rules for this district
also provide that plaintiff shall file a separate motion under Fed. R. Civ. P. 23(c)(1) for
class certification within 90 days after filing the complaint.  D. Kan. Rule 23.1(b).  The
90 day period may be extended by the court.  Id.

[4]

A formal scheduling order has not been entered in this case.  However, by
agreement of the parties, discovery is being conducted in two phases (class certification
phase and liability/damage phase).  The parties are currently engaged in the first phase.

**1. Search Terms**

The parties debate whether the search terms utilized in the tests were "plaintiffs'" terms or "defendant's" terms. Resolution of this argument is unnecessary. Plaintiffs initially served defendant with a series of specifically defined document requests.  The burden of producing documents responsive to those requests remains with defendant.  Since the documents were created, stored, and/or maintained by Quest, defendant is in the better position to develop the most appropriate list of search terms capable of producing the requested documents. Defendant cannot escape its burden of production by now arguing that plaintiffs' suggested search terms are "not specific enough."  If the search terms need to be more specific to answer plaintiffs' production requests, defendant should modify the terms accordingly.  The court rejects defendant's argument that plaintiffs' requests were "not specific enough."

**2. "Not Reasonably Accessible"**

Defendant argues that it should not be compelled to produce the requested email data because the information is "not reasonably accessible" pursuant to Fed. R. Civ. P. 26(b)(2)(B).  Rule 26(b)(2)(B) provides:

> A party need not provide discovery of electronically stored information from sources that the party identifies as ***not reasonably accessible because of undue burden or cost.***  On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is ***not reasonably accessible because of undue burden or cost.***  If that showing is made, the court may nonetheless order discovery from such sources if the requesting

> party shows good cause, considering the limitations of Rule
> 26(b)(2)(C).   The court may specify conditions for discovery.
> (Emphasis added).

Rule 26(b)(2)(C), in turn, provides:

> On motion or on its own, the court must limit the frequency
> or extent of discovery otherwise allowed by these rules or by local
> rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or
> duplicative, or can be obtained from some other source that is more
> convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to
> obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery
> outweighs its likely benefit, considering the needs of the case, the
> amount in controversy, the parties' resources, the importance of the
> issues at stake in the action, and the importance of the discovery in
> resolving the issues.

Defendant contends that the *named plaintiffs'* claims are $100,000 or less and spending $82,500 to generate the emails messages based on the current search terms is unduly burdensome and costly; therefore, the information is "not reasonably accessible."[5] As noted above, the court rejects defendant's argument that the "amount in controversy" is limited to the *named plaintiffs'* claims.  Plaintiffs are entitled to conduct some discovery

---

[5] Defendant acknowledges there are differences of opinion in the limited case law applying this new rule and what "costs" should be considered in determining whether the ESI is or is not reasonably accessible.  Defendant adopts a conservative approach and argues that the issue of "reasonably accessible" is determined by the cost to collect and process the data for review (in this case, $82,500).  The cost of counsel's review for relevance and privilege ($250,000) and copying costs to a TIFF format ($38,500) are not included in defendant's analysis as to whether the data is "reasonably accessible."

concerning class certification issues.   Therefore, defendant's simplistic formula for comparing the *named plaintiffs'* claims with the cost of production is rejected.

**3. Cumulative Discovery**

Defendant argues that the requested ESI is "largely cumulative of the vast amounts of other discovery (both hard copy and electronic data)" already produced and that the "named plaintiffs have failed to identify any piece of information required for class certification (or the merits) that exists exclusively in the email files and that could not be more easily obtained from other files." Doc. 45, p. 21.  It is unclear whether the requested ESI is cumulative or not and this issue should be further refined by defendant if plaintiffs renew their motion to compel.  However, defendant's suggestion that *plaintiffs* somehow have the burden to show that the ESI is *not* cumulative is rejected.  Defendant, the party opposing discovery based on an assertion that the ESI is cumulative, carries the burden of proof on this issue.

**4. Cost Estimates**

Plaintiffs challenge defendant's cost estimates, arguing there is no apparent reason defendant is unable to search the email messages on its own.  Defendant counters that it has some limited internal search capabilities but that it is unable to search "scanned attachments." However, defendant concedes that it is upgrading its software and users may be able to search attachments after completion of the upgrade.  Defendant's IT manager also represents

that defendant's email users would not have the ability to conduct complex searches (for example, one word within a specific number of words or characters of another word).

The court agrees that there are questions concerning defendant's ability to conduct searches internally; however, the court cannot resolve defendant's search capability on the limited record presented. The parties should confer concerning defendant's search capabilities after the upgrade is completed. More importantly, the issue is not whether defendant's *email users* are capable of conducting an appropriate search but rather whether defendant's IT staff are capable of conducting the search.

## 5. Fed. R. Evidence 502

Defendant estimates that a "privilege and relevance" review by counsel will cost approximately $250,000. However, Fed. R. Evidence 502 was recently enacted to reduce the costs of exhaustive privilege reviews of ESI. The parties need to address Rule 502 in any future production and cost discussions.

**IT IS THEREFORE ORDERED** that plaintiffs' motion to compel **(Doc. 41)** is **DENIED WITHOUT PREJUDICE.**

After further consultation by counsel, a brief status report shall be submitted to the court. The report shall include the parties' proposal for further briefing on ESI production, including the proposed deadlines for a renewed motion to compel.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 30th day of October, 2008.


                                        S/ Karen M. Humphreys

                                        _____

                                        KAREN M. HUMPHREYS
                                        United States Magistrate Judge