## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| HUGO SPIEKER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 07-1225-EFM |
| ) | |
| QUEST CHEROKEE, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

This matter is before the court on plaintiffs' renewed motion to compel the production

of electronically stored information.  (Doc. 62).  For the reasons set forth below, the motion

shall be GRANTED.

### Background

Plaintiffs are current and/or former owners of mineral interests in lands burdened by

oil and gas leases owned by defendant.[1]  Highly summarized, plaintiffs allege that defendant

---

[1]

   Plaintiffs' mineral interests are located in the Kansas portion of the Cherokee
Basin, a zone primarily producing coalbed natural gas in southeast Kansas.  Quest
apparently owns approximately 2,500 oil and gas leases in the Kansas portion of the
Cherokee Basin and operates approximately 2,000 coalbed methane gas wells on those
leases.  (Doc. 42, Exhibit 4).

has failed to pay the proper amount of royalties by:

> 1.   paying royalties based on reduced volumes rather than on the volume of gas measured at the wellhead;
>
> 2.   making untimely royalty payments without paying interest;
>
> 3.   allocating expenses in excess of the actual cost of the services represented;
>
> 4.   improperly allocating expenses associated with the production of the effluent stream; and
>
> 5.   improperly allocating marketing costs to plaintiffs.

In addition to their individual claims, plaintiffs seek to represent a class consisting of owners of mineral and/or royalty interests in the Kansas portion of the Cherokee Basin burdened by leases owned by defendant.

## Renewed Motion to Compel

Plaintiffs served defendant with four separate sets of document production requests. Defendant made some materials available for inspection and copying but objected to the production of certain electronically stored information ("ESI"). The parties conferred in good faith but reached an impasse concerning email messages. Plaintiffs' initial motion to compel was denied without prejudice because (1) defendant's estimated cost to comply ranged from $82,000 to $375,000 and (2) plaintiffs failed to explain "how the disputed ESI

discovery is relevant to the issue of class certification." <u>Memorandum and Order</u>, Doc. 57.[2]

Defendant was also upgrading its computer system at the time and the limited record did not

allow the court to determine whether an appropriate search could be conducted at a lower

cost than estimated by defendant.  Finally, Fed. R. Evidence 502 had recently been enacted

to reduce the cost of exhaustive privilege reviews (estimated by defendant at $250,000).  The

parties were directed to "address Rule 502 in any future production and cost discussions."

<u>Id.</u> at p. 9.  The parties again conferred but were unable to reach any resolution of the

discovery controversy related to ESI.  Because of this impasse, plaintiffs renew their motion

to compel and address the issues of (1) relevance, (2) cost, and (3) Rule 502.  The parties'

arguments are addressed in greater detail below.

## Renewed Motion to Compel

### 1. Relevance

As noted above, the court denied plaintiffs' initial motion to compel without prejudice

because plaintiffs failed to explain how the disputed discovery is relevant to the issue of class

certification.  Plaintiffs now assert a two-pronged argument concerning relevance.  First,

plaintiffs argue that defendant waived the relevance issue because it did not object to

production of the requested ESI based on a lack of relevance to class certification and "by

---

[2]

The court also rejected defendant's arguments that (1) plaintiffs' proposed search
terms were "not specific enough" and (2) the "amount in controversy" is limited to the
named plaintiffs' claims.  <u>Id.</u> at p.6-7.

agreement of the parties, discovery has proceeded on both class certification issues and on the merits of plaintiffs' claims." (Doc. 63-3, Defendant's December 1, 2008 letter). Second, plaintiffs argue that the requested ESI *is* relevant to the issue of class certification.

The court has reviewed plaintiffs' arguments and production requests and is satisfied that the requested ESI is relevant to class certification issues. Class certification under Fed. R. Civ. P. 23(a) requires a showing of (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation and plaintiffs' discovery requests are reasonably calculated to lead to the discovery of evidence concerning commonality and typicality. For example, production request number 3 seeks "any and all documents that evidence the categorization of leases or overriding royalty instruments based on language of the royalty clause(s)." This request is reasonably calculated to lead to evidence regarding whether defendant's royalty payment decisions were (1) the result of a general practice and/or policy or (2) a lease-by-lease analysis. Evidence that royalty payments were made pursuant to a general practice or policy arguably supports plaintiffs' class contention of commonality and typicality.

In addition to being relevant to class certification, the court also agrees that defendant failed to timely and properly oppose the requested discovery on the grounds that it is not relevant to class certification. Defendant's December 1, 2008 letter unequivocally states:

> At the outset, it should be noted that **our failure to object** to your requests for production on the grounds of relevance does not necessarily indicate our agreement that all of the requested information is relevant to class certification. As [plaintiffs] are aware, **by agreement of the parties**, discovery in this case has proceeded on both class certification issues and on the merits of plaintiffs' claims. Our objections to [plaintiffs'] discovery, **including the failure to**

-4-

*object,* was done in light of those dual purposes for discovery. (Emphasis added).

In light of these statements, the issue of "relevance" is no longer an impediment to an order compelling production of the requested ESI.[3]

## 2. Cost

Defendant secured an estimate from a third-party vendor (Kroll Ontrack or "Kroll") of approximately $82,500 to process the volume of requested email files and an additional $38,000 charge to copy the ESI information in TIFF format.[4] Defendant also estimated attorney fees of $250,000 for a "privilege and relevance" review by counsel of the ESI. Defendant's Response to Plaintiff's Original Motion to Compel, Doc. 45, p. 9. Because these cost estimates are significant, the court directed the parties to consider (1) conducting computer searches using defendant's recently installed software and in-house IT staff and (2)

---

[3]

Defendant's December 1, 2008 statement that discovery has proceeded *by agreement of the parties on both class certification and the merits* is troubling because defendant opposed plaintiffs' original motion to compel, in part, on the argument that "none of this information appears relevant for class certification." Defendant's Response Brief, Doc. 45, p. 11. As defendant is well aware, the court denied plaintiffs' earlier motion without prejudice based, in large part, on the issue of whether the ESI discovery was relevant to class certification. The inconsistencies between arguments presented to the court and statements to opposing counsel are disturbing.

[4]

Kroll's estimate for putting the data in TIFF format is based on the assumption that one-third of the ESI generated from the parties' search terms will be produced and two-thirds will be non-responsive or privileged. These percentages are based on Kroll's experience and industry data and the *actual* percentage of relevant, non-privileged emails could be much higher or lower.

utilizing Rule 502 to minimize the expense of a detailed privilege review.

With respect to utilizing recently installed software and in-house IT staff, defendant argues that the new software is untested and in-house IT staff have "no internal experience in producing ESI in litigation." Doc. 67, p. 15. Defendant also asserts that "this process would need to be completed on nights and weekends." <u>Id</u>. Because of these uncertainties and additional logistical burdens, defendant argues that the cost of ESI production with in-house resources would be even greater than using an outside vendor.

Defendant's pessimistic arguments concerning its ability to generate the requested ESI materials in-house are not persuasive. First, defendant's assertions that its IT employees have no experience producing discovery in litigation carries no weight. This court is aware of no case where a party has been excused from producing discovery because its employees "have not previously been asked to search for and/or produce discovery materials." Moreover, the argument that the new software is "untested" is inconsistent with statements by Christopher Smith, defendant's IT Manager. Smith avers that he has conducted "some limited searches" and that searches *are* possible if the email are "archived or converted." <u>Smith Affidavit</u>, Doc. 67-3.[5] Defendant's estimated cost for generating ESI data responsive

---

[5]

Smith also asserts that the cost of searching may be greater because defendant *may* need to utilize the email data previously gathered by Kroll. According to Smith, the Kroll data *may* need to be searched because defendant's employees, although ordered not to, may have deleted email messages while this case has been pending.

Smith is merely offering speculation concerning defendant's records at this time. However, the fact that defendant's employees may have wrongfully deleted emails messages and created additional recovery burdens is not a valid justification for denying plaintiffs' motion to compel.

to plaintiffs' production requests is greatly exaggerated.

As noted above, the largest expense cited by defendant is $250,000 for a "privilege and relevance review."  Plaintiffs suggest that defendant can minimize its costs by turning over a copy of all of defendant's ESI in native format with an agreement under Fed. R. Civ. P. 26(b)(5)(B) and Fed. R. Evid. 502 that defendant has not waived the attorney client privilege.  The difficulty with this argument is that Rule 502(b) preserves the privilege if "the holder of the privilege or protection took reasonable steps to prevent disclosure" of the privileged material.  Simply turning over all ESI materials does not show that a party has taken "the reasonable steps" to prevent disclosure of its privileged materials and plaintiffs' proposal is flawed.[6]

Although turning over the ESI material without taking *any* steps to preserve privileged materials would not satisfy Rule 502(b), defendant's estimate of $250,000 to conduct a "privilege and relevance" review is excessive.  For example, defendant argues that search terms will likely capture employee health care information that has no relevance to this case. The court agrees that employee health care information has no relevance to this case; however, the court is at a loss to understand why defendant would use search terms that would capture large volumes of employee health care information.  As the court previously ruled, defendant is the party most familiar with its own records and responsible for preparing

---

[6]

The nature of the "the reasonable steps" necessary for Rule 502(b) are best determined on a case-by-case basis.  Although the precise contours are not defined in this opinion, simply turning over *all* ESI information without some effort to protect privileged material does not rise to the level of "reasonable steps" set forth in Rule 502(b).

search requests that gather information responsive to plaintiffs' discovery requests.  In the unlikely event that employee health care information is captured and contained in the ESI made available to plaintiffs, the court will enter a protective order.

The most disturbing aspect of defendant's estimate of the "costs" to produce the requested ESI is that defendant fails to present *any* modification of its original estimate and persists with arguments that plaintiffs' motion should be denied because (1) ESI discovery production is expensive, (2) other discovery materials have been produced, and (3) plaintiffs can secure the information more efficiently through interrogatories and Rule 30(b)(6) depositions.[7]  Clearly, there are multiple approaches to electronic discovery and alternatives for reducing costs and it appears that defendant asserts the highest estimates possible merely to support its argument that electronic discovery is unduly burdensome.   Under the circumstances, the court concludes that defendant's estimate of the cost to conduct a "privilege and relevance" review is greatly exaggerated.  Defendant's related arguments are

---

[7]

Defendant argues without any support or clarification that plaintiffs have adopted an "all or nothing" approach and rejected defendant's proposal to run "more targeted searches focused on a specific claim or claims."  Doc. 67, p. 2.  Plaintiffs deny this "all or nothing" allegation and assert that "plaintiffs have agreed to limit the number of individuals whose email files would be searched, and agreed to accept the use of substantially narrowed search terms as good faith compliance with all of plaintiffs' requests for production."  Doc. 71, p. 3.

The record reflects some evidence supporting plaintiffs' assertion that they agreed to limit the number of individuals whose email files were searched.  However, the court is unable to fully resolve this apparent dispute concerning who-said-what based on the current record.  What is clear is that defendant fails to offer *any* details on how "targeted searches" or other modifications proposed by defendant would reduce its ESI cost estimates.  It appears that *defendant* is the party adopting an "all or nothing" approach in opposing plaintiff's motion to compel.

discussed in greater detail below.

**"Not Reasonably Accessible"**

Defendant argues that it should not be compelled to produce the requested email data

because the information is "not reasonably accessible" pursuant to Fed. R. Civ. P.

26(b)(2)(B).  Rule 26(b)(2)(B) provides:

> A party need not provide discovery of electronically stored information from sources that the party identifies as ***not reasonably accessible because of undue burden or cost.***  On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is ***not reasonably accessible because of undue burden or cost.***  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).   The court may specify conditions for discovery.  (Emphasis added).

Rule 26(b)(2)(C), in turn, provides:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

The court is not persuaded that defendant has carried its burden of showing that the discovery is "not reasonably accessible because of undue burden or cost."  As discussed above, defendant's cost estimates are greatly exaggerated in an attempt to fall within the parameters of Rule 26(b)(2)(B).

**Cumulative Discovery**

Defendant argues that the requested ESI is largely cumulative of the vast amounts of other discovery (both hard copy and electronic data) already produced.  The party opposing discovery based on an assertion that the ESI is cumulative carries the burden of proof on this issue.  The court is satisfied that the paper "lease files" and other materials previously produced have limitations and defendant's email correspondence and communications were not consistently filed in the "hard copy" files.  Accordingly, defendant has failed to meet its burden of showing that the discovery is cumulative or duplicative.

**"Other Discovery Methods"**

Defendant argues that plaintiffs can more efficiently secure pertinent information concerning defendant's "practices" or "policies" through interrogatories and Rule 30(b)(6) depositions.  However, defendant fails to explain how it can prepare complete interrogatory answers or Rule 30(b)(6) deposition answers without reviewing defendant's email correspondence.  Moreover, documents and correspondence are powerful evidence and a

party is generally entitled to review relevant documents rather than "take an opposing party's word."  Defendant has not provided a compelling argument why plaintiffs should not be allowed to pursue normal document production in this case.


**IT IS THEREFORE ORDERED** that plaintiffs' motion to compel **(Doc. 62)** is **GRANTED.**  The parties shall confer and submit a report to the court on a reasonable time for production of the ESI.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 21st day of July, 2009.


S/ Karen M. Humphreys

_____
KAREN M. HUMPHREYS
United States Magistrate Judge